UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SCHOOL UNION NO. 37, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) Civil No. 05-194-B-W |
| v. | ) |
| | ) |
| MS. C AND DB, | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION**

DB is a student who attended private schools outside of Maine in the years between 1999 and 2004. His mother, Ms. C, a resident of Dallas Plantation during that period, seeks reimbursement from Dallas Plantation/School Union No. 37 for transportation, room and board for DB's private, out-of-state schooling during the 1999 to 2004 period under the Individuals with Disabilities Education Act (IDEA) and its Maine analogue 20-A M.R.S.A. § 7001 et seq. School Union No. 37[1] seeks review of a determination, made by a hearing officer for the Maine Department of Education after a due process hearing, ordering the School Union to reimburse the mother and student $48,890 for room and board and $3241.33 for transportation. I conclude that the hearing officer erred in analyzing and answering the question of whether or not the equitable doctrine of laches bars Ms. C and DB from pressing their argument that they are entitled to reimbursement and I recommend that the Court grant judgment in favor of the School Union.

---

[1] Although Ms. C and DB get testy about the fact that School Union 37 brought this action rather than Dallas Plantation, which was the defendant in the administrative due process action, they limit their discontent to a footnote observation (Defs.' Brief at 1-2 n.1). I refer to the plaintiff as the School Union.

*Discussion*

The School Union articulates seven different grounds for reversing the hearing officer's determination. One of these grounds is double layered; it asserts that Ms. C and DB's claim to reimbursement of room and board and transportation expenses is barred by the doctrines of laches and/or waiver.[2] The School Union points out that when Ms. C proposed the placements in the three different out-of-state residential programs that spanned 1999 through 2004 she was told that the School Union would pay for tuition expenses but would not reimburse her for room and board and transportation. The School Union took the position– which it still maintains—that the placements of DB in the three facilities was pursuant to Maine's School Choice provision, see 20-A M.R.S.A. § 5203 and § 5204, and were not made under the IDEA.[3]  For their part, Ms. C and DB

---

[2] I treat the laches concern only in this decision. The doctrine of waiver, assuming that is the correct term for failing to raise an issue in this context, is most readily applied when it involves a party's position in a single action, See, e.g., Mr. I v. Maine School Administrative Dist. 55, 416 F.Supp.2d 147, 167-68 (D. Me.2006), but when the position was allegedly waived in an earlier proceeding, as is the case here, the application of the doctrine is awkward. Furthermore, the only case law cited by the School Union is a Maine criminal case and the discussion concerned the review of a jury instruction on a partial defense. See State v. Berube, 669 A.2d 170 (Me. 1995). Though unnoted by the School Union, the language cited by the School Union was taken from a dissent. Id. at 174 (Lipez, J. dissenting).

[3] The problem with this position is that the School Union continued to exercise a portion of its IDEA responsibilities during DB's out-of-state placements, paying the special education component of the tuition, over and above the tuition reimbursement rate under the school choice statute. The hearing officer concluded that this was not a "unilateral placement" as the School Union did continue IDEA involvement with DB's education after the residential placements, albeit without a formalized IEP, and also without ever convening a PET to reevaluate DB's program. However, the hearing officer then went on to analyze the case under Burlington School Commission v. Department of Education, 471 U.S. 359 (1985) and Florence County School District v. Carter, 510 U.S. 7 (1993) which are both tuition reimbursement cases that were litigated after unilateral placements following a dispute over the IEP adopted by the school. In the present case there has never been any dispute about the "adequacy" of an IEP because the School Union acceded to Ms. C's out-of-state placement, a placement that was her right under the "school choice" option then in force. The record suggests that the school union and Ms. C reached a tacit agreement that the school had no responsibility under IDEA for room, board, and transportation because Ms. C was making a "school choice." Of course, as the hearing officer pointed out, the "the school's obligation under IDEA is to the student." (Due Process Order at 20.) For five years neither the school nor the parent had any reason to challenge the placement or to believe that DB's educational program was other than appropriate. This dispute, never joined until DB finished his public school education, is not about the child's education. The dispute is about money. The School Union's strategy attempts to avoid its full IDEA responsibilities by trying to treat the placement as a local option school choice decision and Ms. C's strategy accepted that

maintain that the School Union abandoned them to fend for themselves for six years and "now seeks to avoid the long overdue reckoning" of fully recompensing them for these private placements. (Defs.' Brief at 1.)

The hearing officer reasoned apropos the equitable defense of laches:

> Laches is an affirmative defense that can bar a claim for equitable relief, such as reimbursement. Murphy v. Timberlane, 973 F.2d 13, at 16 (*Murphy I*) (quoting *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989)). The First Circuit concluded that if a delay by the party bringing the case was unreasonable, and prejudiced the opposing party, a laches defense could be used as a defense to reimbursement. *Id.* Documents submitted on the record show that the family informed the school on June 14, 2004 of their request for reimbursement. (S-42.) The family also filed their claim within the six-year statute of limitations. This hearing officer does not find the delay unreasonable. The second requirement of *Murphy I* is that the defendant prove by "clear showing of prejudice" that 1) memories of witnesses have faded, or 2) that witnesses are unavailable. *Murphy I*, at 16. In this case, the school's witnesses, who included a former superintendent, the special education director, and student's special education teacher, all provided detailed accounts of PET meetings and conversations relating to the student. There was no mention by the school of any key witnesses that were unavailable to testify.
>
> Dallas Plantation argued that they were denied the "chance to fashion a less expensive acceptable alternative." *James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 769 (6th Cir. 2000), cert. denied, 532 U.S. 995 (2001). In this case, the school district could have convened a PET meeting at any time to propose an appropriate placement.
>
> This hearing officer does not find that the defendant school district was prejudiced or that there was an unreasonable delay in bringing the case. The laches defense may not be used to bar the claim to reimbursement.

(Due Process Order at 14-15.)

With respect to the hearing officer's laches reasoning, her facile tethering of the unreasonable delay component of laches to Maine's liberal six-year outer limitation period for bringing an IDEA action is, just that, facile. When "a plaintiff brings suit within the limitation period, a defendant claiming laches has the burden of proving both

---

characterization in order to receive full tuition reimbursement without the school challenging her educational choice. Both sides chose to "leave well enough alone" while DB was still in school.

unreasonableness of the delay and the occurrence of prejudice." K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989). The unreasonable delay inquiry does not only involve the measurement of time; I must also take into account Ms. C's and DB's acquiescence in the alleged wrong. See Jamesbury Corp. v. Worcester Valve Co., 443 F.2d 205, 210 (1st Cir. 1971) ("Laches requires not only a passage of time but also acquiescence in the alleged wrong by the tardy plaintiff."); Tracerlab, Inc. v. Industrial Nucleonics Corp., 313 F.2d 97, 102 (1st Cir. 1963) ("Invocation of the doctrine of laches requires not only the passage of time but an acquiescence- either express or implied- in the alleged wrong.") Sancho v. Serralles, 106 F.2d 125, 128 (1st Cir. 1939) ("As said by the Supreme Court of the United States in Southern Pacific Co. v. Bogert, 250 U.S. 483, 488 [(1919)]: 'The essence of laches is not merely lapse of time. It is essential that there be also acquiescence in the alleged wrong or lack of diligence in seeking a remedy.'").

Towards this end it is helpful to examine Ms. C's conduct in the context of a dispute concerning res judicata principles that is simmering in this suit. Up until 2003 there is nothing in the record to support the conclusion that the School Union had any reason to even speculate that Ms. C and DB might contest their entitlement to room and board and transportation expenses at these out-of-state institutions. In 2003 Ms. C and DB initiated a due process hearing and in doing so raised the issue of reimbursement for non-tuition expenses as well as responding to a dispute over whether Ms. C was still a resident of Dallas Plantation. In that proceeding the due process hearing officer ordered Dallas Plantation to pay DB's tuition for the years 2002 through 2004, concluding that Ms. C was a resident of the plantation during those two years. The order did not address

the question of Ms. C's and DB's entitlement to reimbursement for non-tuition expenses.[4]
In other words, Ms. C and DB had queued up the question of their entitlement to reimbursement for the non-tuition expenses as early as 2003 and, for some reason or other, let the matter rest – never appealing the 2003 determination which was mute on the issue. In the meantime, Dallas Plantation continued paying the tuition-related expense until the completion of the 2004 school year.[5] An inference might be drawn that the

---

[4]  In 2005, the parties joined issue on the res judicata/issue preclusion implications stemming from Ms. C and DB's prior assertion of their right to reimbursement for their non-tuition expenses.  The 2005 hearing officer indicated in her order as to the res judicata concern:
> In the previous case, the mother's previous attorney raised the claim of reimbursement for room and board in a letter and in a preliminary statement regarding the case (S-25-26) For whatever reason, there was no discussion of the issue at the hearing and the previous hearing officer did not address this issue in her decision. .... Because the parent did not receive an adjudication upon the merits on the claim of whether she was entitled to reimbursement for non-tuition expenses, res judicata should not bar the claim.

(Due Process Order at 16.) Although the hearing officer recognized that res judicata principals could bar claims that a party had the opportunity to raise in an earlier action, she did not apply that principal to the issue at hand.  She also somewhat mystifyingly reflected: "Here, these two claims are distinguishable.  The prior claim was exclusively over the issue of residency."  (Id.)

  Subsequent to the 2005 due process hearing, Ms. C and DB moved to supplement the record with the affidavit of the 2003 hearing officer.  In my order in the current action stemming from the School District's efforts to supplement the record with an affidavit from Attorney Nadzo who then represented the board, I noted that with respect to the 2005 due process hearing:
> Relevant to the issue raised by this motion to supplement is the fact that in the wake of the 2005 hearing, but prior to final arguments, counsel for Ms. C and DB asked the hearing officer for permission to submit an affidavit from the 2003 hearing officer in the hopes of clarifying whether or not the issue of reimbursement was addressed in the 2003 proceeding. Dallas Plantation objected to this request, without making an offer of proof (even though it was well aware of Attorney Nadzo's involvement in the 2003 proceeding). The 2005 hearing officer refused to accept the affidavit proffered by Ms. C and DB. What is more, and of moment to the current motion for supplementation, the parties argued the concerns about res judicata and collateral estoppel in their final submission to the hearing officer. Ms. C and DB requested that the 2005 hearing officer take administrative/judicial notice of the 2003 due process record. And, although faced with this argument, Dallas Plantation did not draw the officer's attention to Attorney Nadzo's potential testimony. Finally, the defendants argue that, in the event that the Court permit the plaintiff's supplemental evidence, they should be allowed to supplement the record with the ... the 2003 hearing officer's affidavit that was rebuffed by the 2005 hearing officer.

(March 2, 2006 Order Mot. Supplement at 3-4, Docket 13.)

[5]  For their part, Ms. C. and DB note that the First Circuit in Murphy I,
> found that the parents were not sitting on their rights, but instead continued to negotiate with the district over a significant period of time, in an attempt to resolve the dispute without litigation; that the parents' decision to postpone the litigation in the hopes that the district would voluntarily provide compensatory education, was not unreasonable; and that the school district's argument that the parents had failed to request due process

defendants did not "rock the boat" (Rec. at 1706) at that juncture in the hopes of assuring that the School District at least continued to pay the tuition related expenses through the conclusion of DB's secondary education. Given the fact that the issue was in the sights of both parties to this dispute prior to the 2003 resolution and, as the School Department points out, brought to Ms. C's attention by Bebko prior to DB's placement in the first of the three residential schools, I disagree with the hearing officer's conclusion that Ms. C's and DB's delay in fully pressing their contention that they were entitled to reimbursement for these non-tuition expenses was not unreasonable.

The hearing officer also misconstrued the Murphy I discussion of prejudice, focusing as she did singularly on the memory/availability of witnesses. In Murphy I the memory/availability of witnesses was discussed by the First Circuit because they were prejudice factors identified by the district court. (The way the hearing officer's order reads the witness memory and availability of witness concerns are the only two-prongs of the laches prejudice inquiry.) In fact, Murphy I also discussed two other prejudice factors considered by the district court: the impact of the delay on the state's contribution to the private-placement expenses and the postulated prejudice to the public school district that might result from the fact that the student has been out of school throughout the course of the proceedings. See 973 F.2d at 17-18. In my reading of Murphy I there is no particular category of prejudice that must be proven by the party asserting a laches

---

        sooner was disingenuous, since the school district had an affirmative obligation to bring a
        due process action if it wished to implement educational programming that the parents
        opposed.
(Pl.'s Brief at 23.) Observing that their claims are governed by a six year statute of limitations, they claim that the School Union "seeks to fault Ms. C. for her conciliatory attempts to avoid litigation," and "the scurrilous attack the First Circuit rejected in Murphy I." (Id.) And, amazingly, they assert that the School Union "itself could have brought a due process action at any time since 1999 – including after Ms. C made demand on Dallas for reimbursement in 2004 – to clarify its obligations to DB and his mother, but did not." (Id.)

defense; rather the onus is on this party to describe and demonstrate its prejudice, whatever the contours of the disadvantage might be.

With respect to prejudice, the School Union asserts in its brief to this Court:

> The IEP's have not changed regarding the issue of residential placement since the first one in 1993, thirteen years ago. At the very least, Ms. C should have challenged the May 1999 IEP since, at that time, she had already decided to send DB to Greenwood. By any standard, Ms. C waited an unreasonably long time to bring these claims.
> In waiting so long to bring these claims, Ms. C has prejudiced School Union No. 37. By delaying until DB is now done with schooling—all the while accepting tuition payments from School Union No. 37 (and ultimately from Dallas Plantation) without ever indicating to School Union No. 37 that she disagreed with any of the IEP's or making any claim at any time for reimbursement of the expenses for which she now seeks reimbursement—Ms. C has denied School Union No. 37 the "chance to fashion a less expensive acceptable alternative." James v. Upper Arlington City Sch. Dist., 228 F.3d 764, 769 (6th Cir. 2000), cert. denied, 532 U.S. 995 (2001).

(Pl.'s Brief at 13.)  Ms. C and DB retort that "the notion that Dallas had no opportunity to offer DB appropriate programming between 1999 and 2004 is absurd." (Defs.' Brief at 24.) [6]  "If the prejudice alleged in Murphy I was insufficient to support a laches defense," they opine in a conclusory fashion, "the case presented by [the School Union] is not even a close call."  (Id.)

Crediting the hearing officer's own statement of the facts summarizing the due process hearing (see Due Process Order at 3-14) I consider the hearing officer's conclusion that there was a want of prejudice in Ms. C's and DB's delay in pressing the issue of their entitlement to reimbursement indefensible.  The record demonstrates a long, protracted, and well documented history of interaction between the educational professionals and Ms. C, with the school taking an active part in addressing DB's special

---

[6]     They also state that the School Union is for the first time articulating its prejudice as being denied the chance to fashion a less expensive acceptable alternative.  (Id.)  However, the hearing officer's own order identifies this as a claim of prejudice articulated by the School Union.

education needs. The record demonstrates that Ms. C first indicated an interest in home schooling and, then, in a residential placement and that the school, while advising Ms. C that they were considering their obligation as limited to a school-choice-esque tuition reimbursement, acceded to Ms. C's decisions in terms of placing DB in alternative environments. In her own briefs Ms. C does suggest that she voiced disagreements at PET meetings which were not reflected in the written documentation but she nowhere represents, let alone avers, that these disagreements had anything to do with the need to place DB in a residential – as opposed to a commutable – educational setting. Given this record, it is hard to fathom how the hearing officer arrived at the conclusion that it was incumbent upon the School Union to somehow bring to a head the question of whether or not it should be responsible for the room and board and transportation expenses for DB apropos these out-of-state placements or risk litigation initiated by Ms. C and DM <u>after</u> the completion of his secondary education. I agree with the School Union that Ms. C's and DB's passivity in pressing their entitlement to reimbursement to the expenses they now seek did prejudice the School Union as it was never given a reason to proffer a less expensive acceptable alternative to the placements preferred by Ms. C during a period that would actually have an opportunity to defray the School Union's fiscal liability.

### *Conclusion*

In sum, I conclude that the hearing officer erred in weighing the equities in this case when asked to do so by the School Union in ruling on their defense of laches.[7] I recommend that the Court grant judgment in favor of the School Union.

---

[7] Given that this is a recommended disposition in a case involving the review of a Hearing Officer's decision under the IDEA, I have limited my discussion to this laches argument pressed by the School Union as I believe that issue to be determinative in this case. I have been guided as to the standard of review set forth in <u>Mr. I v. Maine School Administrative Dist. 55</u>, 416 F.Supp.2d at 156-57. Should the

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) (1993) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 20, 2006                                         /s/ Margaret J. Kravchuk
                                                                  U.S. Magistrate Judge

---

District Court Judge disagree with my recommendation on the laches defense, the current briefs contain an adequate discussion of the parties' positions on the remaining issues that were joined. It would serve no purpose for me to rehash those arguments in this recommended decision, inviting further briefing in objections, and further expense, by the parties.